PENMAN v. EIMCO CORPORATION.

No. 7160.   Decided August 26, 1948.   (196 P. 2d 984.)

*E. LeRoy Shields,* of Salt Lake City, for appellant.

*Fabian, Clendenin, Moffat & Mabey,* of Salt Lake City, for respondent.

WADE, Justice.

This is an appeal by R. J. Penman, the plaintiff below, from a judgment of no cause of action on his complaint and the granting of a judgment on defendant's counterclaim.

This suit originated in the city court wherein Penman sought to recover for a balance alleged to be due for work performed for defendant which defendant denied was due and in which it filed a counterclaim alleging plaintiff had been overpaid $315.10 for the work done. Penman obtained a judgment in the city court. Defendant filed a notice of appeal to the district court from this judgment on February 7, 1947. On May 28, 1947, on motion of plaintiff's attorney and without notice to defendant, its appeal was dismissed because it had failed to pay the filing fee within 30 days after the record was received by the clerk of the district court. On June 5, 1947, defendant filed a motion and affidavit in support thereof to reinstate its appeal and to be relieved of its default. A copy of this motion and affidavit

was duly served on plaintiff. The affidavit in support of its motion averred that the filing fee had been tendered the clerk of the district court when the notice of appeal was filed but that the clerk refused such tender because the record of the proceedings from the city court had not been received. The clerk agreed to advise defendant when he received the record so that it could pay the filing fee, but failed to do so. The court granted defendant's motion to reinstate the appeal for the reason that it appeared no notice had been served on defendant of plaintiff's original motion to dismiss. Plaintiff then filed a new motion to dismiss which the court refused to grant.

Appellant assigns as error the court's vacating and setting aside its order dismissing the appeal and reinstating the action and its denying appellant's motion to dismiss.

Section 104-77-9, U. C. A. 1943, provides that:

"An appeal may be dismissed, *on notice, in the discretion of the court,* for any of the following causes: (1) That the papers were not filed in the district court and the advance fee required therefor paid within thirty days after the transcript was received by the clerk." (Italics ours.)

The statute requires notice be given if the appeal is to be dismissed for failure to pay within 30 days the required filing fee. Since no notice had been given the court was right in vacating and setting aside its original order dismissing the appeal and reinstating the action in ▪ its court. As to the court's action in denying appellant's motion to dismiss the appeal after its reinstatement, the statute leaves it within the discretion of the court whether an appeal should be dismissed on those grounds and it needs no citation of authorities that this court will not review its action unless it clearly appears that it has abused its discretion. Such was not the case here and the court could reasonably conclude as it evidently did that defendant's failure to timely pay the filing fee was due to excusable neglect and inadvertence.

Appellant also assigns as error the court's failing to give him a judgment against respondent and in giving respondent a judgment against him.

The evidence discloses the following facts to be undisputed:

Appellant, who had done work for respondent from time to time for about six years, mostly on a contract basis and sometimes by the day, entered into an oral agreement to haul or move certain scrap material by truck or train from the Tooele Ordinance Depot to respondent's yard in Salt Lake City for $2.00 per ton. Part of this scrap material consisted of igloo forms which were made with channel irons approximately 15 feet long with pipe put through to make oval-shaped truss affairs out of them. When appellant shipped these by train he found that because of their shape he could only load about 30,000 lbs. in a car instead of 60,000 lbs. which was the minimum capacity a car could be loaded to get a rate of 65c per ton. If less tonnage were loaded, the shipper still had to pay 65c per ton on a minimum of 60,000 lbs. per car. This meant to appellant that unless he could get greater tonnage on the igloos per car he would be paying $1.30 per ton shipping it to respondent's yard. He therefore contacted respondent and told it of the situation, and asked it to allow him to cut up the igloos into small pieces at Tooele Ordinance Depot before shipping them to Salt Lake where respondent cut them up in its yard. By so doing, a greater tonnage could be loaded in each car, and he would save a substantial amount on his freight bill. Respondent agreed to allow appellant to do the cutting before shipping to its Salt Lake yard.

What is disputed is whether there was an agreement as to how much appellant should be allowed for the work of cutting the igloos into pieces. Respondent asserts appellant was told he would be allowed the same amount as such work would cost it in its yard. Appellant testified that he agreed to do the cutting at Tooele and be paid for the time it took and the costs of materials used; that he hired three men to use torches to do the cutting and two men to move

the pipe and trusses while the men with the torches were working; that the men with the torches worked 304 hours straight time and 63 hours overtime and that he thought the reasonable value of their labor was $3 per hour, and time and a half for overtime which would be $4.50 per hour overtime; that the reasonable value of the services of the men who were moving things was $2 per hour for straight time, and that they worked 133 hours straight time and 4 hours overtime at time and a half. Appellant called a witness, a practical engineer who operated acetylene torches in his business for about 3 years, who corroborated appellant's estimates as to the reasonable value of the services rendered by the torch men. Appellant admitted on cross-examination that he actually paid the torch men $1 per hour straight time and the men who did the moving 80c per hour straight time, with time and a half for overtime.

One of the respondent's torch men, testifying on behalf of respondent, said he was paid 95c an hour with materials and equipment furnished, and that he did the work more expeditiously than the appellant testified his men did; that he used only 5 cuts, where appellant testified his men used 8 cuts to a truss, thereby saving time and materials.

On respondent's counterclaim evidence was adduced which was not controverted by appellant that respondent had from time to time made advances to appellant so that appellant could meet his pay roll and other expenses and that it had paid the freight bills and the bills for the oxygen consumed by the acetylene torches in the cutting of the trusses. The amounts so paid was also admitted by appellant. Therefore, the only question actually left for the court to determine was what the parties had agreed should be paid for cutting the igloos in Tooele.

The court as trier of the facts found on this question that respondent had agreed that appellant should cut the steel trusses at Tooele providing the cost of cutting the same would be reasonable and not in excess of respondent's cost for cutting it in its yards in Salt Lake City. The court concluded that the amount actually paid by appellant for labor,

materials and for transporting materials from Tooele Ordinance Depot to Salt Lake City was a reasonable cost for cutting and preparing the steel trusses for shipment and that therefore respondent became indebted to appellant for that amount. After deducting from the amount actually advanced to appellant all the amounts to be credited to his account there was left a balance of $45.30 due to respondent for which amount the court gave judgment in favor of respondent.

This being a law and not an equity case, this court can only review the evidence to determine whether there was sufficient to sustain the judgment.

· In our opinion appellant's own testimony was sufficient to sustain the court's judgment. He testified, as we have shown above, that the agreement was that he should be paid for the time it took and the cost of materials. This statement taken in connection with the circumstances under which appellant was allowed to do the cutting at the Tooele Ordinance Depot, i. e. to save himself freight costs, and the fact that respondent was equipped to do the cutting in its own yard in Salt Lake City, could only lead to one conclusion and that is respondent certainly never intended that by modifying its original contract with him it would enhance its own costs and give appellant an opportunity for greater profit to himself at its expense, and the court could reasonably have found that appellant also understood this to be the case at the time the agreement was modified.

There being sufficient evidence to sustain the court's findings, the judgment is affirmed with costs to respondent.

McDONOUGH, C. J., and PRATT, WOLFE and LATIMER, JJ.